# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| SCOTT M. BISHOP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-54-SPM |
| ) | |
| RANDOLPH COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Scott M. Bishop, a prisoner, for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $51.28. *See* 28 U.S.C. § 1915(b)(1). In addition, for the reasons discussed below, the Court will dismiss this case, without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly balance of $256.41. The Court will therefore assess an initial partial filing fee of $51.28, which is twenty percent of plaintiff's average monthly balance.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is factually frivolous if the facts alleged are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Allegations are clearly baseless if they are "fanciful," "delusional," or "fantastic." An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 679. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The Court must review the factual allegations in the

2

complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 680-82.

*Pro se* complaints are to be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but they still must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

## The Complaint

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Randolph County, Missouri, Sheriff Mark Nichols, Deputy Sheriff Michaela Huber, the Moberly Regional Medical Center, Dr. Stephan Griffin, and Unknown Nurse. Plaintiff states he sues the individual defendants in their individual and official capacities.

The complaint is unnecessarily long, and is comprised largely of legally conclusory and exaggerated statements. Condensed and summarized, plaintiff alleges as follows. On January 19, 2018, plaintiff was a passenger in a vehicle driven by his father, D.B.[1] Plaintiff and D.B. had a "verbal disagreement" that led to the cancelation of plans for plaintiff to visit his parents' home. (Docket No. 1 at 5). D.B. drove plaintiff home, and then drove away angry.

About 15 minutes later, plaintiff received a call from "local law enforcement," who told him they were coming to his house. *Id.* Plaintiff said he would be waiting on his front porch.

---

[1] Plaintiff's father will be identified herein using only his initials.

3

*Id.* At approximately 6:00 p.m., three law enforcement vehicles arrived. Huber exited her vehicle, placed plaintiff in restraints, arrested him, and took him to the Randolph County Jail. When plaintiff asked why he was under arrest, Huber replied "you know why because you got into it with your dad." *Id.* at 6. Plaintiff submitted to a breathalyzer, which was negative for the presence of alcohol. Huber again restrained plaintiff and took him to the hospital. Plaintiff objected, stating that he felt fine.

Upon arrival at the hospital, plaintiff was placed in an examination room, and a nurse measured his vitals. He remained in restraints. Several minutes later, Huber, Dr. Griffin, and Unknown Nurse entered the examination room. Dr. Griffin offered plaintiff a shot of Haloperidol,[2] and plaintiff declined. Unknown Nurse was standing next to plaintiff, holding a syringe. Dr. Griffin directed Unknown Nurse to give plaintiff the injection. Dr. Griffin and Huber nodded at each other in agreement. Plaintiff was injected with a "life threatening overdose volume" of medication. *Id.* at 8. Plaintiff characterizes the administration of the injection as "assault and battery." *Id.* Plaintiff states that he "remembers Dr. Griffin stating 'Now I'm going to check your brain' as he was fading into a comatose state, shortly after the assault and battery of forceful injection was perpetrated." *Id.*

Over the next three hours, plaintiff faded in and out of consciousness. He "believes he actually died or almost died at some point because of an outerbody experience in which he remembers blue and pink lights while repeating over and over 'I believe in JESUS CHRIST.'" *Id.* at 9 (emphasis in original). At one point he awoke to find he was in a hospital room restrained by four-point restraints. At another point he awoke to find he had undergone tracheal

---

[2] Haloperidol is a conventional antipsychotic medication.
https://medlineplus.gov/druginfo/meds/a682180.html (last visited October 16, 2018).

4

intubation, but he was able to pull out the tube even though he was in restraints. He awoke fully at about 10:30, and was released from the hospital and returned to the Randolph County Jail.

Plaintiff then sets forth his claims for relief in a section titled "Injury Liability Analysis." *Id.* at 11. He claims he was the "victim of a perpetrated life threatening assault and battery after being forcibly injected with an unwanted/protested overdose volume of antipsychotic drugs." *Id.* at 11. He claims he suffers from recurring nightmares. He characterizes the act of injecting him with Haloperidol as a crime, and claims he "[FEARS] law enforcement officials in the same fashion any victim of a life threatening crime would fear the criminals that placed their life in harms way." *Id.* at 11 (brackets and emphasis in original). He writes that a jury "will have [NO] difficulty ascertaining their unanimous decision that, whether clothed with the authority of State law or, jointly engaged private individual groups endowed with governmental duties and functions, the defendants were in fact acting under the color of State law when they conspired with each other to jeopardize Scott's life in the same manner of a laboratory rodent." *Id.* (brackets and emphasis in original). He states that "documented records" establish a link between "Randolph County and Moberly Regional Medical Center the defendants unconstitutional customs, practices, and policies are shown to be the direct moving force behind [plaintiff's] assault and battery," in that customs, practices and policies result in county prisoners being injected with "a life threatening overdose volume of antipsychotic drugs" and also result in unlawful search and seizure. *Id.* at 12. Plaintiff claims Nichols is liable for implementing customs and practices that led to a reckless disregard for his life. He states that Nichols failed to supervise or train his deputies. He claims that Dr. Griffin and Unknown Nurse committed assault and battery. He claims that Huber "nodded in consensual agreement" as Dr. Griffin supervised the administration of "a life threatening, unwanted/protested, volume of antipsychotic

5

drugs." *Id.* at 14. He states, in conclusory fashion, that each defendant directly participated in the assault and battery.

As relief, plaintiff seeks an award of $4.2 million in compensatory damages, "plus any/all mental, medical and reasonable attorney fees that may be associated with the defendants criminal actions in this matter." *Id.* at 16. Plaintiff also seeks an award of $4.2 million in punitive damages to convey the message that prisoners should not be used as "human guinea pigs." *Id.*

## Missouri State Court Records

This Court takes judicial notice of the following Missouri State Court records that are relevant to the case at bar, as obtained through the public records published on Missouri.Case.Net.[3]

On December 11, 2017, plaintiff pleaded guilty to driving while revoked/suspended. On February 7, 2018, he was sentenced to 3 years' incarceration, the execution of which was suspended, and he was placed on probation. *State v. Bishop*, No. 17RA-CR00967-01 (14th Jud. Cir. 2017). It was noted that plaintiff had two previous convictions for driving while intoxicated.

On May 1, 2018, a felony complaint was filed, alleging that, on January 19, 2018, plaintiff committed felony domestic assault in the third degree against D.B., a blood relative. *State v. Bishop*, No. 18RA-CR00359 (14th Jud. Cir. 2018). Defendant Huber prepared a Probable Cause Statement. Therein, Huber wrote that, on January 19, 2018, D.B. appeared in the Moberly Police Department with facial injuries sustained when plaintiff punched him repeatedly with a closed fist while the two were traveling in D.B.'s vehicle. D.B. also had a laceration to the left side of his face consistent with an ice scraper located in the vehicle. Plaintiff was taken into custody and transported to the Moberly Regional Medical Center to receive an examination.

---

[3] *See Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) (district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records.").

6

Plaintiff continuously cursed and yelled while "Dr. S.G." examined him. He then assaulted Dr. S.G. by repeatedly spitting on him.

On July 18, 2018, plaintiff pleaded guilty to the felony domestic assault charge against him. He was sentenced to 90 days in jail, with credit for time served. However, due to that offense, his probation in case number 17RA-CR00967-01 was revoked, and the court ordered the previously-imposed sentence executed. It is that sentence that plaintiff is presently serving.

**Discussion**

As an initial matter, the Court is concerned about plaintiff's attempt to mislead the Court by alleging he and D.B. had only a "verbal disagreement" on January 19, 2018, and his apparent attempt to lead the Court to believe that he was arrested for no reason. The Court also finds that many of plaintiff's statements are exaggerated, and at times are even delusional. *See Denton*, 504 U.S. at 32-33 (an action is factually frivolous if the facts alleged are "clearly baseless," and allegations are clearly baseless if they are "fanciful," "delusional," or "fantastic."). Nevertheless, the Court will address plaintiff's claims against each of the named defendants.

The Court first addresses plaintiff's claims against Dr. Griffin and Unknown Nurse. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, plaintiff states that Dr. Griffin and Unknown Nurse were acting under color of state law, and he alleges that they are responsible for administering a "life threatening" and "overdose" amount of psychiatric medication. Even if it could be said that Dr. Griffin and Unknown Nurse's actions were fairly attributable to the state, it cannot be said that either was deliberately indifferent to plaintiff's medical needs. Based upon the information before the

Court, plaintiff violently assaulted his father, and was arrested and taken to the hospital for a medical examination. During the examination, plaintiff exhibited combative behavior, and assaulted the doctor. The doctor then treated plaintiff with a one-time dose of psychiatric medication. The fact that plaintiff disagrees with Dr. Griffin and/or Unknown Nurse's medical decision to treat him with the medication, or plaintiff's belief that he was given an incorrect dose, establish that plaintiff disagrees with the course of medical treatment he was provided, or, at most, that Dr. Griffin and/or Unknown Nurse committed medical malpractice or negligence. However, "a mere disagreement with treatment decisions does not rise to the level of a constitutional violation," *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008), and medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In addition, plaintiff's proffered conclusion about the circumstances surrounding the administration of the medication is implausible, and supported only by clearly baseless allegations that this Court will not weigh in plaintiff's favor. The Court concludes that plaintiff has failed to state a claim of constitutional significance against Dr. Griffin and Unknown Nurse.

Plaintiff can also be understood to allege that Dr. Griffin and Unknown Nurse violated state tort law. Claims sounding in state tort law are not cognizable under § 1983, *see Rubek v. Barnhart*, 814 F.2d 1283, 1285 (8th Cir. 1987), and this Court would lack subject matter jurisdiction over a state law tort claim, as it appears plaintiff and the defendants are citizens of the same state. *See* 28 U.S.C. § 1332. Plaintiff also claims that Dr. Griffin and Unknown Nurse committed a crime against him. However, plaintiff has no federally-protected right, or any other basis, to compel a criminal investigation or to have another person prosecuted for a crime. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law

8

right, much less a constitutional right, to an investigation"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). Finally, this Court cannot compel a criminal investigation. *See Ray v. Dep't of Justice*, 508 F. Supp. 724, 725 (E.D. Mo. 1981) ("It is well settled that initiation of federal criminal prosecution is a discretionary decision within the Executive Branch not subject to judicial compulsion.") (citations omitted).

The Court now turns to plaintiff's allegations against Huber. Plaintiff alleges that Huber "nodded in consensual agreement" as Dr. Griffin supervised the administration of the "life threatening" dosage of medication. (Docket No. 1 at 14). This allegation simply fails to state any claim of constitutional significance. In addition, plaintiff does not allege, nor is it apparent, that Huber is a medical professional. She therefore cannot be held responsible for Dr. Griffin's medical decisions. To the extent plaintiff can be understood to claim that Huber (or any other law enforcement defendant) falsely arrested him, such claim is foreclosed by plaintiff's subsequent guilty plea. *See Williams v. Schario*, 93 F.3d 527, 528-29 (8th Cir. 1996). To the extent he can be understood to sue Huber for violation of state tort or criminal law, such claims fail for the reasons discussed above.

Plaintiff also suggests that the defendants engaged in a conspiracy. To prevail on a § 1983 claim for conspiracy, a plaintiff must allege, *inter alia*, the deprivation of a constitutional right or privilege. *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (internal citation omitted). Here, as discussed above, plaintiff's allegations fall short of alleging any constitutional violation. He therefore cannot maintain a § 1983 conspiracy claim.

Plaintiff has also named as defendants Randolph County, Missouri, Moberly Regional Medical Center, and Sheriff Mark Nichols. He does not allege, with any specificity, that Nichols

9

participated directly in the alleged misconduct. Instead, he bases his claims against these defendants upon *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, (1978). To state a claim under *Monell*, a plaintiff must establish, *inter alia,* that a constitutional violation occurred. Here, as discussed above, plaintiff has failed to so establish, and he therefore cannot maintain a *Monell* claim against these defendants. In addition, plaintiff's vague and conclusory allegations of unconstitutional policies, practices, customs, and a failure to train or supervise are insufficient to state actionable claims. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Finally, plaintiff fails to state a claim under § 1983 against Nichols because he fails to allege, with any specificity, that Nichols participated directly in the alleged misconduct. *See Martin v. Sargent*, 780 F.2d 1334 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege the personal responsibility of defendant); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (*respondeat superior* theory inapplicable in § 1983 cases).

Because plaintiff's federal claims will be dismissed, the Court will also dismiss all remaining supplemental state law claims. *See* 28 U.S.C. § 1367(c)(3).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $51.28 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 4) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 15th day of October, 2018.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE